UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOY L. FANCHER ,

                               Plaintiff,                                       19-CV-158Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #16.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on February 17, 2011, alleging disability beginning February 1, 2005, at the age of 41, due to depression, bipolar disorder, right knee injury, shoulder pain, stomach ulcers and asthma. Dkt.#6-6, p.7.

On March 28, 2013, plaintiff received an unfavorable decision following a hearing. Dkt. #6-3, pp.4-16. On December 23, 2014, the Appeals Council remanded the

case back to the Administrative Law Judge ("ALJ"), for further evaluation of plaintiff's mental impairment in light of the opinion of the state agency review physician, Dr. Tzetzo, that plaintiff's bipolar disorder was a severe mental impairment. Dkt. #6-3, p.22.

On October 7, 2015, plaintiff received a second unfavorable decision. Dkt. #6-3, pp.31-43. On May 17, 2017, the Appeals Council remanded the case back to the ALJ for further consideration of plaintiff's bipolar disorder because the ALJ's determination of mild limitations was inconsistent with the determination that plaintiff's bipolar disorder was severe and for further consideration of plaintiff's past relevant work given that it involved responsibilities beyond that of a cashier, as well as reconciliation of a conflict between the ALJ's restriction on handling and fingering and the handling and fingering requirements of plaintiff's past relevant work. Dkt. #6-3, pp.27-28.

On January 5, 2018, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Jay Steinbrenner, at an administrative hearing before Administrative Law Judge ("ALJ"), Bryce Baird. Dkt. #6-2, pp.29-78. Plaintiff testified that she lives in an apartment with her autistic adult son, adult daughter and seven-year old nephew. Dkt. #6-2, pp.37 & 52. She cooks a lot and does the grocery shopping with her boyfriend's help. Dkt. #6-2, p.61. S & 62. She has her General Equivalency Diploma ("GED") and started college for phlebotomy, but dropped out. Dkt. #6-2, pp.37 & 64. She was working 12-18 hours a week at Second Hands and Community Helping Hands sorting through clothes and occasionally working at the cash register as a requirement for cash assistance from the Department of Social Services ("DSS"). Dkt. #6-2, pp.57-58 & 62.

Plaintiff testified that she was unable to work because of constant burning and throbbing pain in the center of her neck which becomes worse if she turns her head from side to side or lifts even a gallon of milk; left shoulder spasms which prevent her from sweeping, vacuuming, or carrying a gallon of milk or bag of potatoes; tennis elbow on her dominant, left side; and throbbing, burning pain in her right knee which worsens if she stands more than 15 minutes, makes it difficult to walk more than a half hour and prevents her from kneeling; and bipolar disorder. Dkt. #6-2, pp.40-41; 45-50 & 62-63. Plaintiff sleeps most of the time because she is depressed and becomes anxious when she leaves the house. Dkt. #6-2, pp.51 & 54. She is uncomfortable around other people and generally keeps to herself. Dkt. #6-2, pp. 58 & 62. She was using cocaine everyday several years ago, but described her current use as very seldom. Dkt. #6-2, p.55.

The VE classified plaintiff's past work as a shift manager at a convenience store as skilled work performed at a light exertional level. Dkt. #6-2, p.68. When asked to assume an individual with plaintiff's age, education and past work experience who could lift and carry up to 50 pounds on occasion and 25 pounds frequently; sit and stand or walk for up to 6 hours in an eight hour day; climb ramps or stairs frequently; stoop frequently and occasionally crouch; and reach with her left arm frequently, but could not climb ladders, ropes or scaffolds or kneel or crawl or be exposed to excessive cold or vibration or to hazards such as unprotected heights and moving machinery and would be limited to simple, routine tasks that can be learned after a short demonstration or within 30 days, which would require no more than simple work-related decisions and no more than superficial interaction with the public and up to occasional interaction with coworkers, the VE testified that plaintiff could not perform her past work, but could work

as a warehouse worker, kitchen porter, or dining room attendant, each of which were unskilled, medium exertion positions. Dkt. #6-2, pp.69-70. If the individual could only lift and carry up to 20 pounds on occasion and 10 pounds frequently, the VE testified that plaintiff could work as a sales attendant, cafeteria attendant or cashier, each of which were unskilled, light exertion positions. Dkt. #6-2, pp.70-71. When questioned as to the public interaction required of those positions, the VE testified that the positions involved only superficial or incidental interaction with the public, but offered the positions of stock checker, mailroom clerk, and injection molder as unskilled, light exertion positions which would have no interaction with the public. Dkt. #6-2, pp.72-73.

The ALJ rendered a decision that plaintiff was not disabled on April 13, 2018. Dkt. #6-2, pp.10-20. The Appeals Council denied review on December 30, 2018. Dkt. #6-2, p.2. Plaintiff commenced this action seeking review of the Commissioner's final decision on February 1, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v.*

*Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which

exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of February 17, 2011; (2) plaintiff's depression, bipolar disorder, history of left shoulder arthritis and cervicalgia constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform medium work[1] with the following limitations: lift and carry 50 pounds occasionally, lift and carry 25 pounds frequently, stand, walk or sit for 6 hours in an eight-hour workday, frequent climbing and stooping, occasional crouching, no kneeling or crawling, frequent reaching and overhead reaching with the left arm, no exposure to excessive cold, vibration or hazards such as unprotected heights or moving machinery, simple, routine tasks that can be learned after a short demonstration or within 30 days, work that would not require more than simple work-related decisions, and no more than superficial interaction with the public or occasional interaction with coworkers; and (5) plaintiff was not capable of performing her past work, but was capable of working as a warehouse worker, kitchen porter, and dining room attendant, each of which were unskilled, medium exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6-2, pp.15-20.

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.
20 C.F.R. § 404.1567(c).

**Mental Impairments**

Plaintiff argues that the ALJ improperly relied upon his own lay opinion rather than the opinions of trained mental health professionals and should have developed the record by requesting a medical opinion from plaintiff's mental health providers or obtaining an updated mental assessment in light of plaintiff's deteriorating mental health and considerable mental health treatment subsequent to the consultative examination and state agency review. Dkt. #10-1, pp.20-26.

The Commissioner responds that the ALJ appropriately considered the opinions of consulting and reviewing state agency examiners, as well as subsequent treatment notes and plaintiff's activities of daily living to determine that plaintiff was capable of simple work with limited interaction with others. Dkt. #13-1, pp.10-18.

In light of the essentially non-adversarial nature of a social security proceeding, it is well accepted that an ALJ has an affirmative duty to develop the administrative record. *See, e.g., Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). Due to the difficulty in determining whether individuals suffering from mental illness will be able to adapt to the demands or stress of the workplace, the duty to develop the record is particularly important where mental illness is present. *Marcano v. Berryhill*, 17 Civ. 4442, 2018 WL 5619749, at *11 (S.D.N.Y. July 13, 2018). This duty exists even when the claimant is represented by counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). However, the ALJ is required to seek out additional evidence only where there are obvious gaps in the record. *Eusepi v. Colvin,* 595 Fed. App'x 7, 9 (2d Cir. 2014).

The ALJ is not obligated to seek additional medical records where the record evidence is sufficient for the ALJ to make a disability determination. *Johnson v. Comm'r of Soc. Sec.,* 16-CV-831, 2018 WL 1428251, at *5 (W.D.N.Y. March 22, 2018).

SSA regulations in effect when plaintiff filed her claim provide that the agency "will request a medical source statement," although the lack of a medical source statement will not necessarily render the record incomplete. *Pellam v. Astrue*, 508 Fed. App'x 87, 90 n.2 (2d Cir. 2013), *citing* 20 C.F.R. § 404.1513(b)(6). In *Tankisi v. Commissioner of Social Security*, for example, the Court of Appeals declined to remand where an ALJ failed to request medical source opinions but the extensive medical record contained an assessment of plaintiff's limitations by a treating physician. 521 Fed. App'x 29, 34 (2d Cir. 2013). In *Pellam*, the Court of Appeals determined that the ALJ was not required to obtain a medical source statement from one of plaintiff's treating physicians because the ALJ's assessment of plaintiff's RFC was largely supported by a consultative examiner's report. 508 Fed. App'x at 90. Thus, an RFC finding without treating source opinion evidence will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source. *Smith v.Comm'r of Soc. Sec.*, 337 F. Supp.3d 216, 225-26 (W.D.N.Y. 2018). "It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010).

In the instant case, there are no treating source opinions. However, Christine Ransom, Ph.D., conducted a consultative psychiatric evaluation of plaintiff on April 16, 2011. Dkt. #6-7, p.276. Dr. Ransom observed that plaintiff's motor behavior was hyperactive and restless, her eye contact was darting and unfocused and her affect was moderately to markedly irritable and dysphoric. Dkt. #6-7, pp.277-278. Dr. Ransom determined that plaintiff's attention, concentration and memory were moderately impaired by emotional disturbance and opined that she would

> have moderate difficulty following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule and learning simple new tasks. She would have moderate to marked difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress due to bipolar disorder, currently moderate to marked.

Dkt. #6-7, pp.278-279. Dr. Ransom recommended that plaintiff seek full psychiatric treatment with medication and therapy. Dkt. #6-7, p.279.

In addition, on April 29, 2011, state agency medical consultant and psychiatrist, Hillary Tzetzo, reviewed the medical evidence, including the psychiatric evaluation of Dr. Ransom as part of a Psychiatric Review Technique which concluded that plaintiff was capable of engaging in work "that involves no more than simple tasks and does not involve working closely with others." Dkt. #6-7, p.292. More specifically, Dr. Tzetzo's Mental Residual Functional Capacity Assessment concluded that plaintiff would not be significantly limited in her ability to:

- understand, remember and carry out very short and simple instructions;

- sustain an ordinary routine without special supervision; or

- make simple work-related decisions or sustain an ordinary routine without special supervision

but would be moderately limited in her ability to:

- maintain attention and concentration for extended periods;

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods;

- interact appropriately with the general public;

- accept instruction and respond appropriately to criticism from supervisors;

- get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

- maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

Dkt. #6-7, pp.294-295. When asked to rate plaintiff's functional limitations in accordance with the "B" Criteria of the listings, Dr. Tzetzo opined that plaintiff would have moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace. Dkt. #6-7, p.290.

The ALJ afforded Dr. Ransom's opinion partial weight

because the opinion itself is not supported by the findings on examination. For example, examination revealed that the

> [plaintiff's] thought processes were coherent and goal-directed but the [plaintiff] was assessed with having moderate difficulty following and understanding simple directions and instructions.

Dkt. #6-2, p.19. The ALJ also afforded Dr. Tzetzo's opinion partial weight, noting that Dr. Tzetzo's opinion was based upon "B" Criteria which was no longer utilized.[2] Dkt. #6-2, p.19. In further support of his RFC, the ALJ noted that claimant testified to a significant functionality, which was supported by the objective medical evidence of record, including activities required to receive cash assistance and caring for her children. Dkt. #6-2, p.19.

An ALJ is not required to adopt wholesale the opinion any one medical source, but is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole. *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018). Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Moreover, a plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were

---

[2] Effective January 17, 2017, SSA altered three of the four areas of functioning assessed under the paragraph B criteria of mental disorders: (1) Activities of Daily Living became Understand, Remember, or Apply Information; (2) Social Functioning became Interact with Others; (3) Concentration, Persistence, or Pace remained the same; and (4) Episodes of Decompensation became Adapt or Manage Oneself.

beneficial to her application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support his conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995).

It was not error for the ALJ to fail to obtain additional opinion evidence regarding plaintiff's mental capacity as the medical record is complete and there is no evidence that plaintiff's mental condition deteriorated subsequent to the consultative evaluation and state agency review. *See Lesanti v. Comm'r of Soc. Sec'y*, 436 F.Supp.3d 639, 646 (W.D.N.Y. 2020) (although a medical opinion may be stale if it does not account for a plaintiff's deteriorating condition, a medical opinion is not necessarily stale based simply on its age). While plaintiff continued mental health treatment throughout the duration of this case, and experienced both an overdose and suicide attempt during this time frame, the overall mental health record consistently references notable, but stable, symptoms of mental illness. Despite these symptoms, plaintiff continued to care for her adult child with autism, accepted the role of caregiver to her nephew, age 7, following his mother's death, cared for pets, participated in retail work as a requirement for benefits from DSS and performed household chores.

The ALJ's RFC accounted for the limitations identified by the consultative examiner and state agency reviewer. Specifically, the ALJ's restriction of plaintiff to simple, routine tasks that can be learned after a short demonstration or within 30 days

and work that would not require more than simple work-related decisions accounts for Dr. Tzetzo's opinion that plaintiff would not be significantly limited in her ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision or make simple work-related decisions. Dkt. #6-7, pp.294-295. Similarly, the ALJ's restriction of plaintiff to no more than superficial interaction with the public and up to occasional interaction with coworkers accounts for Dr. Tzetzo's opinion that plaintiff would be moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors and get along with coworkers and maintain socially appropriate behavior. Dkt. #6-7, p.295. The ALJ's determination that plaintiff could work at substantial gainful employment levels is consistent with Dr. Tzetzo's opinion that plaintiff would be moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Dkt. #6-7, p.295. Even at the moderate level, such limitations would not preclude unskilled work. *Dubuc v. Comm'r of Soc. Sec'y*, 10-CV-389, 2020 WL 3619865, at *3 (W.D.N.Y. July 2, 2020) (unskilled work accounts for moderate limitations in maintaining concentration and schedule and performing simple tasks); *Mayer v. Comm'r of Soc. Sec*., No. 18-CV-62, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) (collecting cases holding that moderate limitations do not preclude a plaintiff's ability to perform unskilled work). While Dr. Ransom opined that plaintiff's capacity for relating adequately with others and appropriately dealing with stress would be moderate to marked, even this more severe limitation would not be incompatible with unskilled work. *See DelCarmen Fernandez v.*

*Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (affirming ALJ's determination that moderate-to-marked limitations in the plaintiff's ability to deal with stress, maintain a schedule and make decisions were consistent with a capacity to perform unskilled work). Thus, the medical source opinions of Dr. Ransom and Dr. Tzetzo support the ALJ's determination that plaintiff was capable of unskilled work.

### Physical Impairments

Plaintiff also argues that the ALJ failed to consider medical opinions from Dr. Sirtoenko, Single Decision Maker ("SDM"), Bruno and Family Nurse Practitioner ("FNP"), Hinderleider regarding plaintiff's physical capacity. Dkt. #10-1. p27. Plaintiff argues that her right knee and left elbow impairments were not accounted for and affect the ALJ's determination that plaintiff was capable of medium exertion work. Dkt. #10-1, pp.27-30.

The Commissioner responds that SDM Bruno is not a medical provider and that his initial decision regarding plaintiff's application for disability is not entitled to any weight. Dkt. #13-1, p.19. The Commissioner argues that Nurse Hinderlieder deferred opinion as to plaintiff's physical limitations. Dkt. #13-1, p.20. Finally, the Commissioner argues that Dr. Sirotenko's opinion is not inconsistent with the ALJ's restrictions. Dkt. #13-1, p.20. Overall, the Commissioner argues that the ALJ's physical RFC is supported by substantial evidence. Dkt. #13-1, pp.21-25.

On April 16, 2011, George Alexis Sirotenko, D.O. conducted an internal medicine examination of plaintiff. Dkt. #6-7, pp.272-275. Dr. Sirontenko observed that

plaintiff gait was normal; she could walk on heels and toes; her squat was full; station was normal; her cervical spine showed full flexion, extension, lateral flexion and full rotary movement bilaterally. Dkt. #6-7, pp.273-274. She had full range of motion in the shoulders, elbows, forearms and wrists with tenderness in the lateral aspect of the left elbow. Dkt. #6-7, p.274. She had full range of motion of the hips, knees and ankles with positive patellar grind on the right. Dkt. #6-7, p.274. Dr. Sirontenko opined that plaintiff would have a mild limitation regarding repetitive keeling, squatting or bending, stairs, inclines or ladders, as well as a mild limitation regarding left elbow twisting, turning, grasping, pushing or pulling on a repetitive basis. Dkt. #6-7, p.275. These limitations, particularly with respect to plaintiff's right knee and left elbow, are accounted for in the ALJ's non-exertional limitations prohibiting kneeling or more than frequent climbing or stooping or more than occasional crouching, keeling or crawling or more than frequent reaching and overhead reaching with the left arm and no exposure to excessive vibration. Dkt. #6-2, p.17. Although the ALJ failed to mention Dr. Sirontenko's opinion directly in his decision, so long as the record permits the court to glean the rationale of an ALJ's decision, the ALJ is not required to mention every item of evidence presented to him. *Petrie v. Astrue*, 412 Fed App'x 401, 407 (2d Cir. March 8, 2011).

On May 2, 2011, Single Decision Maker S. Bruno completed a Physical Residual Functional Capacity Assessment determining that plaintiff was capable of frequently lifting 25 pounds and occasionally lifting 50 pounds; could stand, walk or sit about six hours in an eight hour day; and had limitations for pushing and pulling in her upper extremities, but no postural, manipulative or environmental limitations. Dkt. #6-7, p.298-300. Because a single decision maker is not a medical professional, courts have

found that an RFC assessment from such an individual is entitled to no weight as a medical opinion. *Box v. Colvin*, 3 F. Supp.3d 27, 46 (E.D.N.Y. 2014). However, these limitations, if not more restrictive limitations, were incorporated into plaintiff's RFC in reliance upon substantial evidence from the consultative examiner and the medical record.

On January 5, 2018, FNP Nicole Hinderleider completed a Physical Treating Medical Source Statement with respect to plaintiff's diagnosis of cervicalgia. Dkt. #6-11, p.121. FNP Hinderleider had treated plaintiff for this long-standing condition six times over the course of six months and opined that plaintiff's prognosis was good. Dkt. #6-11, p.121. She deferred opinion with respect to plaintiff's functional limitations as a result of this impairment. Dkt. #6-11, p.122. FNP Hinderleider's statement does not support limitations beyond that set forth in plaintiff's RFC.

The ALJ recognized medical evidence of a minimal posterior disc bulge at C6-C7; a diagnosis of cervicalgia; left elbow pain treated with injections; a history of left rotator cuff repair and left shoulder rotator cuff tendonitis/impingement symdrome. Dkt. #6-2, p.18. However, the record does not reveal that any of these conditions impair plaintiff's functional capacity beyond the limitations imposed by the ALJ. For example, an MRI of plaintiff's left shoulder on November 6, 2007 revealed very mild changes of tendinitis close to the insertion of a prior repair of the rotator cuff performed on June 26, 2007, but otherwise no significant abnormal findings. Dkt. #6-7, pp.33. Plaintiff's left elbow pain is considered a chronic condition. Dkt. #6-7, p.166. Plaintiff was treated for right knee pain with an injection on October 14, 2010, but an MRI of her knee was

normal, and physical therapy was recommended. Dkt. #6-7, pp.79-81 & 244. Accordingly, plaintiff has not met her burden of demonstrating that her combination of physical impairments warrants an RFC more restricted than that determined by the ALJ.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #13), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**   Buffalo, New York
September 30, 2020

            *s/ H. Kenneth Schroeder, Jr.*
            **H. KENNETH SCHROEDER, JR.**
            **United States Magistrate Judge**